

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1630-07

### JEREMY WAYNE BALDWIN, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

KELLER, PJ., delivered the opinion of the unanimous court. KEASLER, J., filed a concurring opinion in which HERVEY, J., joined. COCHRAN, J., filed a concurring opinion.

The question here is whether an officer exceeded his authority during a suspect's detention. After asking the handcuffed suspect where his identification was located, the officer reached into the suspect's pocket to retrieve his wallet. We hold that the officer did exceed his authority, and we reverse the judgments of the courts below.

## I. BACKGROUND

### A. The Incident

The trial court denied appellant's motion to suppress evidence without making any express findings of fact. Viewed in the light most favorable to the trial court's ruling,[1] the evidence shows the following: Deputy Tommy Smith was patrolling the Turtle Lake subdivision, a "medium" crime neighborhood, at about 10:30 p.m. on November 3, 2005, when he was "flagged down by a citizen" standing outside with a phone in her hand. The middle-aged woman, whom Deputy Smith had previously seen in the neighborhood, told him that she was surprised that he had arrived so quickly. She thought that he had been dispatched after she called the police.

The woman said that "she had spotted a white male dressed all in black walking around looking into houses," and she did not recognize him to be from the neighborhood. Deputy Smith did not know whether the woman meant that the person was looking into houses from the sidewalk or walking up to the windows to look inside. The woman knew, as did Deputy Smith, that there had been several burglaries in the neighborhood, and she told Deputy Smith that she didn't know if the white male "was a part of it or not, but he may have been." After this conversation, Deputy Smith drove off in the direction in which the woman had seen the man walking.

A few blocks away, Deputy Smith encountered appellant, who matched the description the woman had given him. Appellant was dressed all in black and walking down the sidewalk. After seeing Deputy Smith and making eye contact, appellant "began a very fast walking pace away from" the officer. Deputy Smith stopped his patrol car, got out, and walked up to appellant. The deputy told appellant about the citizen's call, asked where he lived, and asked for his identification.

---

[1] *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997).

Appellant did not respond to the question about where he lived, but he asked why the officer wanted to see his identification, and he looked "nervous."[2] Based on his past experience, Deputy Smith determined that appellant was anxious and nervous to a degree that "usually means he is going to fight or he is going to run." Appellant's behavior was consistent with that of other uncooperative persons Deputy Smith had encountered, and as a result, the deputy was "in fear of [his] life."

At that point, Deputy Smith handcuffed appellant for "officer safety" and asked where his identification was. Appellant replied that it was in his right pants pocket. Deputy Smith considered that response to constitute permission to reach into appellant's pocket, so he did, and he retrieved a small wallet. Appellant's driver's license was in the wallet inside a clear plastic case, and Deputy Smith took the license out of the case to examine it. At that point, he saw a small baggie with white powder in it behind the license. When Deputy Smith took the baggie out of the case, appellant said, "That dope is not mine. I found it." The white powder field-tested positive for cocaine.

## B. Court of Appeals Opinion

After the motion to suppress was denied, appellant pled guilty pursuant to an agreement. He then appealed. Upholding the trial court's ruling on the motion to suppress, the court of appeals found that the circumstances that were related to the officer by the citizen and observed by the officer before appellant was handcuffed were sufficient to give rise to reasonable suspicion to detain him for further investigation.[3] The court of appeals also found that the momentary intrusion into

---

[2] Deputy Smith described appellant's nervousness as being "nervous with his hands, lot of movement with his hands, speaking fast, looking, eyes not – head not turning, but eyes scanning the area." In addition, appellant did not look Deputy Smith in the eye during this interaction.

[3] *Baldwin v. State*, 237 S.W.3d 808, 812-14 (Tex. App.–Houston [14th Dist.] 2007).

appellant's pants pocket to retrieve his wallet "was a minimal, necessary, and reasonable encroachment upon appellant's liberty under the circumstances."[4]

## II. ANALYSIS

We do not need to decide whether Deputy Smith effectuated an arrest or an investigative detention, nor do we need to decide whether reasonable suspicion existed to support an investigative detention. There was no valid basis for an arrest, and, assuming arguendo that there was a valid basis for an investigative detention, there was no valid basis for reaching into appellant's pocket to procure his wallet.

Had there been a valid arrest, Deputy Smith's act of reaching into appellant's pocket would have qualified as a "search incident to arrest."[5] But to effectuate a valid arrest, an officer must at that time have "probable cause to believe that a criminal offense has been or is being committed" by the person in question.[6] The ultimate determination of whether probable cause exists is subject to *de novo* review on appeal.[7] Probable cause is a "fluid concept" that cannot be "readily, or even usefully, reduced to a neat set of legal rules."[8] Though the concept evades precise definition, it involves "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized."[9] "Probable cause" is a greater level of suspicion than "reasonable suspicion" and requires

[4] *Id.* at 814.

[5] *Chimel v. California*, 395 U.S. 752, 762-63 (1969).

[6] *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

[7] *Guzman*, 955 S.W.2d at 87-88.

[8] *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003).

[9] *Id.*

information that is more substantial in quality or content and a greater reliability with respect to the source of information.[10] At least in the context of searches, probable cause involves "a fair probability that contraband or evidence of a crime will be found."[11] Probable cause is a relatively high level of suspicion, though it falls far short of a preponderance of the evidence standard.[12]

At the time he reached into appellant's pocket, Deputy Smith had the following information: (1) a woman he knew by sight was so concerned about an unknown man walking in the neighborhood that she called the police, (2) appellant fit the general description given by the woman, (3) appellant was dressed all in black, (4) appellant was looking into houses, but the officer had not ascertained from what vantage point this took place, (5) there had been several recent burglaries in the area, (6) the area was a "medium" crime neighborhood, (7) it was 10:30 at night, (8) upon seeing the deputy, appellant began to walk more quickly, (9) appellant was very nervous, glancing around, scanning the area, and refusing to make eye contact with the deputy, and (10) appellant asked why he needed to present his identification. We conclude that these circumstances did not give rise to the relatively high level of suspicion that would constitute probable cause to arrest. Because Deputy Smith did not have probable cause to arrest at the time, reaching into appellant's pocket cannot be justified by the "search incident to arrest" doctrine.

A valid investigative detention can confer upon an officer the authority to pat down the suspect for weapons.[13] Under the "plain feel" doctrine, an officer conducting a pat-down may seize

---

[10] *Alabama v. White*, 496 U.S. 325, 330 (1990).

[11] *Id.*

[12] *See Pringle*, 540 U.S. at 371 (*quoting Illinois v. Gates*, 462 U.S. 213, 235 (1983)).

[13] *See Terry v. Ohio*, 392 U.S. 1, 29 (1968).

an object "whose contour or mass makes its identity immediately apparent" as contraband.[14] But when the conditions of the "plain feel" doctrine (or the "plain view" doctrine) are not present, an officer conducting a valid investigative detention must have probable cause in order to conduct a search for non-weapon contraband or other evidence.[15] For the same reason that Deputy Smith lacked probable cause to arrest, he also lacked probable cause to search for non-weapon contraband or other evidence. Though an officer may ask a defendant to identify himself during a valid investigative detention,[16] that does not automatically mean that the officer can search a defendant's person to obtain or confirm his identity. Consequently, the officer's conduct of reaching into appellant's pocket – even under a valid investigative detention – was an illegal search unless there existed some exception to the usual probable cause requirement.

The only exception worthy of discussion in this case is consent. As mentioned above, Deputy Smith believed that appellant's answer to a question regarding the location of his identification constituted permission to retrieve that identification. We find this belief to be objectively unreasonable. Appellant's response was simply an answer to the officer's question (after being handcuffed) and not a consent for the officer to search his person.[17]

---

[14] *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). An officer may not, however, manipulate the unseen item to determine its identity as contraband. *Id.* at 378-79.

[15] *Id.* (discussing *Arizona v. Hicks*, 480 U.S. 321 (1987))(Though officer in *Hicks* had the right to be where he was, he could not move a stereo to reveal its serial numbers without probable cause to believe that it was stolen.).

[16] *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 187 (2004)("The principles of *Terry* permit a State to require a suspect to disclose his name in the course of a *Terry* stop.").

[17] *See Kaupp v. Texas*, 538 U.S. 626, 631 (2003)(Suspect's "okay" in response to officer's statement that "we need to go and talk" was a "mere submission to a claim of lawful authority" rather than consent to accompany the officer.).

We reverse the judgments of the courts below and remand the case to the trial court for further proceedings consistent with this opinion.

Filed: March 11, 2009
Publish