

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1630-07

**JEREMY WAYNE BALDWIN, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
**FROM THE FOURTEENTH COURT OF APPEALS**
**HARRIS COUNTY**

**COCHRAN, J., filed a concurring opinion.**

### OPINION

I join the majority opinion although it resolves this case on a basis not specifically raised by the parties. I think that it is important also to address one particular issue presented in appellant's petition for discretionary review: Was appellant "arrested" without probable cause when Deputy Smith handcuffed him? Given the circumstances in this particular case, I believe that he was "arrested" at the moment he was handcuffed.

I.

As the majority notes, Deputy Smith stopped his patrol car when he saw a man–appellant–who matched the description given to him by the unidentified woman. He got out, approached appellant, and asked him for his ID. Instead, appellant asked Deputy Smith why he wanted to see his ID. Deputy Smith described what happened next:

Q.      So, you asked him for his identification and he didn't – did he provide you his identification at that point?
A.      At that point he became nervous and anxious and at that point I handcuffed him.

Deputy Smith testified that he handcuffed appellant for "officer safety." He said, "I handcuffed him for officer safety because my past experience when an individual becomes nervous and anxious in the manner that he was acting and scanning the area, that usually means he is going to fight or he is going to run." Deputy Smith also noted that appellant's behavior was consistent with behavior that he had seen before from "uncooperative persons" and that he was placed in "fear of [his] life."[1] Deputy Smith said that he is 5'4" tall, weighs

---

[1] On cross-examination Deputy Smith elaborated on his fear:
Q.      And you are saying the only thing that put you in fear of your life is that he was nervous, shaking, and shuddering?
A.      Yes.    * * *
Q.      So, is it your testimony today that you would nearly handcuff any suspect if you see him nervous, shuddering and shaking?
A.      Yes, I will.
Q.      That is your standard procedure?
A.      Yes, it is.
Q.      Is that the kind of training that you received through the Harris County Sheriff's Department?
A.      Yes, it is.
Q.       They said, If you see someone shaking, shuddering and nervous, you have the right to handcuff them?
A.      Yes, it is, if I am in fear of my life I have a right to handcuff them.

180 pounds, and has received training to prevent someone from taking his weapon.

Once Deputy Smith handcuffed appellant, he asked him where his ID was.  Appellant told him "that it was in his pants pocket," so Deputy Smith reached into the pocket and retrieved a small wallet. The license was in the wallet inside a pocket with a clear plastic covering, and Deputy Smith took the license out of the pocket to examine it.  At that point, he saw a small baggie with white powder in it behind the license.

The trial court denied appellant's motion to suppress and the court of appeals affirmed.[2]  Justice Anderson dissented and concluded, *inter alia*, that appellant was arrested when he was handcuffed.[3]

## II.

I agree with the majority that, in this case, we need not decide whether Deputy Smith had reasonable suspicion to support an investigative detention because, even if the detention were reasonable under the Fourth Amendment, the handcuffing was neither necessary nor reasonable under these particular circumstances.

The State argues that Deputy Smith handcuffed appellant based on "officer safety." "Officer safety" is a legitimate purpose.  However, the need for handcuffing and the threat to officer safety must not be imagined or objectively unreasonable under the particular

---

[2] *Baldwin v. State*, 237 S.W.3d 808 (Tex. App.—Houston [14th Dist.] 2007).

[3] *Id.* at 821 (Anderson, J., dissenting) (stating that "if the force utilized exceeds that reasonably necessary to effect the goal of the stop, this force may transform an investigative detention into a full-blown arrest.").

circumstances.  Nor may it be done simply because a citizen declines an officer's request to

see his identification.  Deputy Smith agreed that appellant's objection to being asked for his

identification was lawful and that he could have "kept going home" at that point.

The reasonableness of the use of handcuffs depends, in particular, on whether

handcuffs are reasonably necessary to "allow the officer to pursue his investigation without

fear of violence[.]"[4]  On the other hand, the use of handcuffs may escalate a citizen encounter

or investigative detention into an arrest if there is no evidence that the suspect is dangerous

or poses a flight risk.[5]

In *State v. Sheppard*,[6] we recently held that a person is not necessarily "arrested" for

purposes of the Fourth Amendment if he is temporarily handcuffed and detained, but then

---

[4] *Adams v. Williams*, 407 U.S. 143, 146 (1972).  As the Fifth Circuit explained in *United States v. Jordan*, 232 F.3d 447 (5th Cir. 2000):

> Handcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause.  The relevant inquiry is whether the police were unreasonable in failing to use less intrusive procedures to safely conduct their investigation.  Here the officers first asked Jordan to place his hands on the hood of the car, but he refused to do so. He was acting nervously, saying "wait, wait" in response to the officers' questions, moving his hands erratically, and continuously looking over his shoulder. When one officer grabbed Jordan's arm and told him to calm down, Jordan jerked his hand away and walked towards the officers in "an aggressive-type manner."

*Id*. at 450 (cites omitted).  Given both the suspect's degree of physical uncooperativeness and his "aggressive" manner toward the officers, the Fifth Circuit held that the officers did not act unreasonably in handcuffing the suspect who was being investigated for the violent crime of robbery.  *Id.*

[5] *See United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990) (handcuffing was an important factor in determining that an arrest had occurred because there was no evidence that suspect was particularly dangerous).

[6] 271 S.W.3d 281 (Tex. Crim. App. 2008).

released.[7]  We explained that handcuffing a person who has been temporarily detained "is not ordinarily proper, but yet may be resorted to in special circumstances, such as to thwart the suspect's attempt to 'frustrate further inquiry.'"[8]  In *Sheppard*, we concluded that temporarily handcuffing the suspect "for officer safety" while the officer conducted a brief walk-through of the defendant's trailer to determine whether a third person was present was reasonable under the totality of the circumstances.[9]  In that case, the officer had talked to the alleged victim of an aggravated assault who told him that the defendant had just threatened him with a "big knife" while he and the defendant, along with a woman, were "doing some speed."[10]  When the defendant opened his door, the officer immediately smelled a "very strong chemical odor coming out of the trailer," so he frisked the defendant and found a large folding knife in his front pocket.[11]  Because the assault victim's statements that the defendant had a large knife and that they were "doing speed" had both been corroborated by the officer's own observations, the officer was concerned about the third person–the woman with whom both men were "doing speed."  Based on the evidence that the defendant had been armed and may have been involved in drug manufacturing (for which weapons are frequently

---

[7] *Id.* at 283.

[8] *Id.* at 289 n.29 (quoting 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 9.2(d), at 311-13 (4th ed. 2004)).

[9] *Id.* at 291.

[10] *Id*. at 284.

[11] *Id.*

used to protect the product), we concluded that the officer was objectively reasonable in temporarily handcuffing the defendant for "officer safety" while he looked for the missing woman in the trailer.[12] Thus, there were several specific facts that supported the objective reasonableness of the officer's conduct under the totality of the circumstances.

We have also held that handcuffs were consistent with a detention, rather than an arrest, under circumstances such as when an officer was left alone with a suspect at night after his partner had left the scene to chase an accomplice,[13] and when an officer was called to a possible burglary at an apartment and was alone with two much larger suspects.[14] Reports of gunfire in the area, along with suspicious behavior, have led us to conclude that handcuffing was appropriate.[15] In each of those cases, the officer had specific, articulated reasons to fear for his safety.

Like the officers in *Rhodes*, *Mays*, and *Balentine*, Deputy Smith was alone at night when he met appellant, but the similarities end there. Deputy Smith articulated no reason to suspect that appellant was carrying any type of weapon,[16] burglary is not an inherently violent crime, and Deputy Smith was not outnumbered. Appellant was not combative; he was not

---

[12] *Id.* at 288.

[13] *Rhodes* v. State, 945 S.W.2d 115, 117-18 (Tex. Crim. App. 1997).

[14] *Mays v. State*, 726 S.W.2d 937, 943-44 (Tex. Crim. App. 1986).

[15] *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002).

[16] Deputy Smith's testimony did not indicate that the prior burglaries involved any weapons and the unnamed woman made no report of seeing a weapon, as was the situation in *Balentine*.

hiding his hands or reaching for his pockets; he did not attempt to flee.[17]  The only fact that Deputy Smith articulated for "fearing for his life" was that appellant was anxious, nervous, and glancing around the area.  The fact that a pedestrian is nervous when approached by a police officer at night, without more, is insufficient reason to handcuff him.  But Deputy Smith testified that his standard procedure is to handcuff any suspect that he sees is "nervous, shuddering, and shaking."

I am reluctant to second-guess police officers who must make split-second decisions based upon the particular circumstances they encounter on the street.  But I cannot uphold Deputy's Smith's routine handcuffing procedure, and I cannot find that the totality of the circumstances made handcuffing appellant an objectively reasonable response to appellant's nervousness or his questioning of Officer Smith.  Here, unlike the situation in *Sheppard*, the officer did not have any specific facts suggesting that appellant was armed, had committed a violent offense, or was about to do so.  Because the handcuffs were not reasonably necessary to further a legitimate purpose of a temporary detention or for "officer safety," once Deputy Smith handcuffed appellant, the encounter or detention became a *de facto* arrest.[18]  And, as the majority correctly concludes, Deputy Smith did not have probable cause

---

[17] Although appellant started walking briskly away when he first saw Deputy Smith, he voluntarily stopped to talk to the officer when approached, which would seem to dispel the notion that he was a flight risk.

[18] *See, e.g., People v. Stier*, 168 Cal. App.4th 21, 28 (2008) (officer's act of handcuffing drug suspect during temporary detention because suspect was much taller than officer was not reasonably necessary; officer did not have any specific articulable facts suggesting suspect was armed or about to commit a violent crime, act of handcuffing converted detention into a "*de facto*

to arrest appellant at the time that he searched his wallet, much less at the time that he handcuffed him.

Thus, I join the majority in reversing the judgments of the courts below.

Filed: March 11, 2009

Publish

---

arrest" that was unsupported by probable cause; therefore, suspect's subsequent consent to search was not voluntary); *In re Antonio B.,* 166 Cal App.4th 435, (Cal App. 2008) (when officer handcuffed teen-ager who was walking down street with a friend who was smoking a marijuana cigarette, he converted temporary detention into *de facto* arrest without probable cause; subsequent consent to search his pocket was therefore invalid; detective's "policy" of handcuffing any suspect he detains for further investigation regardless of the circumstances of the stop ignores the constitutional directive that a detention based upon reasonable suspicion of criminal activity must be conducted using the least intrusive means reasonably available under the circumstances of that particular detention."); *Longshore v. State*, 924 A.2d 1129, 1145 (Md. App. 2007) (handcuffing suspect converted temporary detention on suspicion of drug possession into *de facto* arrest as defendant "was neither a flight nor safety risk"); *Cocke v. State*, 189 So.2d 132, 135 (Fla. App. 2005) (appellate court assumed without deciding that defendant was lawfully stopped in the first place, but the detention turned into a *de facto* arrest, without probable cause, when defendant was handcuffed, placed inside of the patrol car, and detained for a significant period of time); *Baggett v. State*, 849 So.2d 1154, 1157 (Fla. App. 2003) (defendant detained on suspicion of burglary based on anonymous citizen's report, but when officer did not pat down suspect and there was no evidence that "threatening circumstances existed," handcuffing suspect for duration of investigation converted detention into *de facto* arrest); *State v. Pfleiderer,* 8 S.W.3d 249, 256 (Mo. App. 1999) (even if police properly detained defendant based on anonymous tip, handcuffing him converted detention into *de facto* arrest for which there was no probable cause); *United States v. Acosta-Colon*, 157 F.3d 9, 18 (1st Cir. 1998) (handcuffing of suspected drug trafficker at airport simply because a drug suspect might be armed and dangerous converted temporary detention into *de facto* arrest; government's "factually unanchored justification" was "generalizable to virtually *every* investigatory stop involving a drug suspect. To accept that purported justification here would therefore be to endorse the use of handcuffs in *every* investigatory stop initiated upon an articulable suspicion of drug trafficking."); *United States v. Smith*, 3 F.3d 1088, 1094 (7th Cir. 1993) (seizure involving use of handcuffs may be upheld as *Terry* stop "in the 'rare' case wherein common sense and ordinary human experience convince us that an officer believed reasonably that an investigative stop could be effectuated safely only through the use of handcuffs."); *see generally* 4 LaFave, Search & Seizure § 9.2(d), at 311-13.