Affirmed and Majority and Dissenting Opinions filed September 25, 2007









Affirmed and
Majority and Dissenting Opinions
filed September 25, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00632-CR

____________

 

JEREMY WAYNE BALDWIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 





 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 1046027

 





 

D I S S E N T I N G   O P I N I O N

The Fourth Amendment to the United States Constitution
provides, in part, AThe right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated[.]@  U.S. Const. amend. IV.  At every
level of the detention, search, and arrest of appellant, appellant=s Fourth Amendment
rights were violated by Deputy Smith.  Nevertheless, the majority utilizes
sophistry to sustain Deputy Smith=s unlawful search
and seizure, thus damaging appellant=s reputation with
an illegitimate arrest for merely walking down a public sidewalk. Therefore, I
respectfully dissent.

 

Factual and Procedural Background

A.     
Appellant Goes For a Walk

Appellant testified that during the evening of November 3,
2005, he left his parents= home in the Turtle Lake subdivision to
take a walk and smoke a cigarette.  After a ten year absence, appellant
had moved back into his parents= home about a week and a half before he
was arrested on November 3, 2005.

B.     
Just the Facts, Ma=am

 

Deputy Tommy Smith, a Harris County Deputy Sheriff,
testified that on November 3, 2005, he was working as the contract deputy
patrolling the Turtle Lake subdivision, his regular assignment.  According
to Deputy Smith, Turtle Lake has a moderate crime rate.  At about ten o=clock that
evening, while patrolling the subdivision, Deputy Smith was flagged down by a
middle-aged female citizen.  While the citizen informed Deputy Smith she
had reported her observations to the authorities by telephone, he was not
dispatched to her as a result of her alleged report, but merely happened to see
her as he was patrolling.[1] 
Deputy Smith recognized the citizen as someone who lived in the
neighborhood.  Deputy Smith did not know the citizen other than having
seen her in the subdivision on several prior occasions.  Deputy Smith did
not obtain any contact information from the citizen, as she did not want to be
involved and did not want her name mentioned.  The anonymous citizen told
Deputy Smith she had spotted a white male, dressed in black, walking around
looking into homes.  She also informed Deputy Smith she did not recognize the
man in black to be from the neighborhood.  The anonymous citizen also
volunteered to Deputy Smith that she was aware there had been burglaries in the
neighborhood, that she did not know if the man in black was part of those
burglaries or not, but he may have been.  Deputy Smith admitted during
cross-examination that the anonymous citizen did not report seeing the man in
black committing a crime and that she did not specify the manner in which the
man in black was allegedly looking into houses or whether he approached the
houses.  The anonymous citizen pointed out the direction she had last seen
the man in black walking.

Deputy Smith testified that despite the fact he did not
personally know the anonymous citizen, had previously spoken to her only in
passing, and had never had to rely on any information she had given him in the
past, he believed she was very credible and he had no reason to doubt
her.  Deputy Smith quickly drove off in the direction the anonymous
citizen had indicated, looking for the man in black, even though he knew
walking around a subdivision looking at windows was not against the law and he
had received no reports that evening of any burglaries in the area.  A few
moments later, Deputy Smith saw appellant, dressed in black, walking on the
sidewalk.

C.     
Deputy Smith Detains Appellant

 

As Deputy Smith approached appellant in his patrol car,
appellant turned around, saw Deputy Smith=s patrol car, and
began walking at a very fast pace; but not running.  Deputy Smith quickly
caught up with appellant, exited his patrol car, and asked appellant for his
identification.[2] 
According to Deputy Smith, appellant did not refuse to produce his
identification, but became nervous when he questioned why Deputy Smith wished
to see his identification, and stated Deputy Smith had no right to stop him for
walking down the street.[3]
At that point, mere seconds after he had initially approached appellant, Deputy
Smith handcuffed appellant.  Deputy Smith testified on cross-examination
the only reason he handcuffed appellant was because appellant became nervous
and anxious and it was his standard policy to handcuff suspects when they
become nervous and anxious because, in his experience, they are about to run or
fight.[4] 
Deputy Smith also testified that appellant had not refused to produce his
identification prior to being handcuffed.  Deputy Smith did not conduct a
pat-down search of appellant for weapons prior to handcuffing appellant.

After he handcuffed appellant, Deputy Smith asked appellant
where his identification was located.  Appellant told him it was in his
pants pocket.  Deputy Smith reached into appellant=s pocket and
grabbed appellant=s wallet pouch.  Appellant=s wallet pouch had
a slot, with a clear plastic covering, on one side. Appellant=s driver=s license was in
this slot, behind the plastic cover.  Deputy Smith testified that, despite
the clear plastic cover, parts of appellant=s driver=s license were
obstructed, so he removed the license.  Once he removed the license, he
saw a small baggy containing a white powder in the same slot.  According
to Deputy Smith, appellant immediately said: AThat dope is not
mine. I found it.@  Deputy Smith field tested the white
powder and it tested positive as cocaine.  During the suppression hearing,
Deputy Smith admitted appellant had not committed an illegal act in his
presence until he discovered the cocaine.  Finally, Deputy Smith testified
he did not arrest appellant until that point.  In its brief filed with
this court, the State concedes Deputy Smith did not have probable cause to
arrest appellant until he discovered the cocaine inside appellant=s wallet.

Discussion

 

Both state and
federal courts recognize three categories of interaction between police and
citizens: encounters, investigative detentions, and arrests.  Mount v.
State, 217 S.W.3d 716, 724 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  Because there is a continuum of human interaction,
what may begin as a consensual encounter can readily become an investigative
detention, which may evolve into an arrest.  Josey v. State, 981
S.W.2d 831, 838 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).  The
majority holds that the initial contact between appellant and Deputy Smith
began as an encounter, quickly escalated into an investigative detention, and
culminated with appellant being arrested only when Deputy Smith discovered
cocaine in appellant=s wallet.  As I disagree with the
majority=s progressive
characterization of the incident at issue in this appeal, I address each level
of potential interaction between a citizen and police in turn.  

A.     
Encounter

An encounter is a friendly exchange of pleasantries or
mutually useful information.  Gaines v. State, 99 S.W.3d 660, 666 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  An encounter does not implicate Fourth Amendment
concerns because the defining characteristic of an encounter is the ability of
the citizen to choose not to participate in the encounter or to simply walk
away.  Id.  The contact remains an encounter only until
a reasonable person would believe he is not free to leave and has yielded to
the officer=s show of authority or has been physically forced to
yield.  Id.

I disagree the initial contact between appellant and Deputy
Smith was ever an encounter but instead was immediately an investigative
detention thus implicating appellant=s constitutional
rights to be free from improper searches and seizures.  Deputy Smith, who
was in uniform and driving a marked patrol car, testified he pulled up beside
appellant, exited his patrol car, identified himself as a police officer, and
detained appellant to investigate the report of a suspicious person seen
walking through the neighborhood.  I would hold that under those
circumstances, a reasonable person would believe he was not free to
leave.  In addition, the fact that appellant, who had initially begun
walking away at a fast pace from Deputy Smith=s patrol car,
stopped once Deputy Smith exited his patrol car and identified himself as a
police officer, demonstrates he had yielded to Deputy Smith=s display of
authority.

 

The majority=s attempt to
characterize the initial contact as an encounter is further undermined by their
later use of appellant=s walking away at a fast pace when he
first saw Deputy Smith=s patrol car, which is the defining
characteristic of an encounter, as some evidence justifying Deputy Smith=s detention and
handcuffing of appellant.  Thus, on the one hand, the majority, by
labeling the initial stop as only an encounter, holds Deputy Smith did not need
specific articulable facts creating reasonable suspicion to stop
appellant.  See Florida v. Bostick, 501 U.S. 429, 433, 111 S.Ct.
2382, 2386, 115 l.Ed.2d 389 (1991) (stating that in a consensual encounter, a
police officer need not have any articulable reasons for initiating an
encounter or approaching a citizen and asking questions because constitutional
concerns are not implicated).  Then, on the other hand, the majority uses
appellant=s exercise of his right to avoid an encounter with
police against him by labeling appellant=s act of walking
away from Deputy Smith as Aunprovoked flight@ thus contributing
to reasonable suspicion to detain and handcuff him.[5]  By engaging in
such circular analysis, the majority demonstrates a cavalier disregard for the
constitutional protections against illegal searches and seizures.

B.     
Temporary Investigative Detention 

1.      
Reasonable Suspicion Must Be Reasonable

 

An investigative detention occurs when a person is
confronted by a police officer who, under a display of law enforcement
authority, temporarily detains the person for purposes of an
investigation.  State v. Garcia, 25 S.W.3d 908, 911 (Tex. App.CHouston [14th
Dist.] 2000, no pet.). An officer conducts a lawful temporary detention when
the officer has reasonable suspicion to believe that an individual is violating
the law.  Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App.
2005).  Reasonable suspicion exists if the officer has specific,
articulable facts that, when combined with rational inferences from those
facts, would lead the officer to reasonably conclude that a particular person actually
is, has been, or soon will be engaged in criminal activity.  Id.  This is an objective standard that disregards any subjective intent of the
officer making the stop and looks solely to whether an objective basis for the
stop exists.  Id.  An officer may not detain a person without
a showing of reasonable suspicion, a particularized and objective basis for
suspecting the particular person of criminal activity.  Klare v. State,
76 S.W.3d 68, 72 (Tex. App.CHouston [14th Dist.] 2002, pet.
ref.).  The detaining officer must point to something that would lead a
reasonable person to believe that the person being detained was engaged in a
criminal act.  Id. at 73.  These specific, articulable facts
must amount to more than a mere hunch or suspicion.  Davis v.
State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  The validity of a
seizure is a dual inquiry: whether the officer=s action was
justified at its inception and whether it was reasonably related in scope to
the circumstances that justify the interference in the first place.  Klare,
76 S.W.3d at 73.  A reasonable suspicion determination is made by
considering the totality of the circumstances.  Ford, 158 S.W.3d at
492B93.  When the
initial detention is unlawful, any evidence seized subsequent to the detention
is inadmissible.  Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim.
App. 1994).

2.      
Deputy Smith Did Not Have Reasonable Suspicion to Detain Appellant

 

An examination of the testimony from the suppression
hearing reveals that the specific, articulable facts cited by Deputy Smith are
scant at best, and certainly there are none that would lead a reasonable person
to believe that appellant was engaged in a criminal act.  First, an
anonymous citizen, standing on a public street, reported seeing a man dressed
in black walking along a public street looking into houses.  She did not
report the manner in which the man in black was looking into houses or whether
he approached them.  During his suppression hearing testimony, Deputy
Smith admitted walking along a street looking into windows is not
illegal.  The anonymous citizen chose to remain unknown as she did not
want to get involved.  Deputy Smith testified he did not even attempt to
take any contact information from the anonymous citizen for that reason.[6]  Next, Deputy Smith
reported he saw appellant, at approximately ten o=clock in the
evening, dressed in black, walking along the sidewalk a short distance away
from the anonymous citizen.  Appellant initially quickened his pace when
Deputy Smith approached in his patrol car but he did not attempt to flee. 
Appellant became nervous when Deputy Smith exited his patrol car and detained
him.  Appellant questioned Deputy Smith=s reason for
stopping him but did not resist being handcuffed.  When viewed in an
objective fashion, no known fact, or rational inferences from those facts,
would support the conclusion that appellant was engaged in or soon would engage
in criminal activity.  Davis, 947 S.W.2d at 244.

 

The majority contends Deputy Smith corroborated sufficient
aspects of the anonymous citizen=s tip to justify
detaining appellant.  However, reasonable suspicion requires an anonymous
tip to be reliable in its assertion of illegality, not just in its tendency to
identify a determinate person.  Johnson v. State, 146 S.W.3d 719,
721 (Tex. App.CTexarkana 2004, no pet.).  Therefore, an
anonymous tip must be corroborated not only as to the identity of the
individual sought to be accused, but also as to the improper nature of the
conduct.  Hall v. State, 74 S.W.3d 521, 525 (Tex. App.CAmarillo 2002, no
pet.).  In addition, innocuous conduct alone does not justify an
investigatory stop for which reasonable suspicion is required unless there is
other information or surrounding circumstances of which the police are
aware.  Klare, 76 S.W.3d at 73.  Here, there was no additional
information or surrounding circumstance known to Deputy Smith that would
justify detaining appellant while he was engaged in the lawful activity of
walking along a public sidewalk.

While the State characterizes appellant=s conduct on the
evening of November 3, 2005 as Ahighly suspicious,@ in actuality the
only conduct seen by Deputy Smith or the anonymous citizen, was someone walking
along a street, which Deputy Smith admitted is not illegal.  In addition,
acting nervous when detained by a police officer, which is the sole reason
given by Deputy Smith for his decision to handcuff appellant, does not, alone,
constitute grounds to reasonably suspect criminal activity is afoot.  Davis v. State, 61 S.W.3d 94, 98 (Tex. App.CAmarillo 2001, no
pet.).  The Turtle Lake subdivision is not a high crime area,[7] Deputy Smith testified
he was not aware of any reports of burglaries on the evening of November 3, and
time of day, while a factor that may be considered when determining whether an
officer=s suspicion was
reasonable, is not suspicious in and of itself.  Klare, 76 S.W.3d
at 73B74.  Based on
the totality of the circumstances, Deputy Smith did not have specific,
articulable facts upon which to base reasonable suspicion that appellant was
engaged in suspicious activity justifying his detention.[8]  Instead, Deputy
Smith=s detention of
appellant was based on no more than a mere hunch and therefore constitutes an
illegal detention.  The majority, by allowing a police officer=s hunch to suffice
in place of specific, articulable facts,  eviscerates Terry=s[9] reasonable suspicion
protection and thus removes the reasonable from reasonable
suspicion.  See Ford, 158 S.W.3d at 493 (emphasizing the
requirement that a temporary detention must be based on specific, articulable
facts).

 

I would hold that under the totality of the circumstances,
Deputy Smith did not have reasonable suspicion that appellant was, or was about
to be engaged in criminal activity, and the trial court abused its discretion
when it denied appellant=s motion to suppress.

C.     
Arrest

The highest level of contact between police and a citizen
is an arrest.  Gaines, 99 S.W.3d at 666.  A person is arrested
when he has been actually placed under restraint or taken into custody by an
officer.  Tex. Code Crim. Proc. Ann.
art. 15.22 (Vernon 2005).  A person is deemed to be in custody if a
reasonable person would believe that, under the relevant circumstances, his
freedom of movement was restricted by the same amount associated with a formal
arrest.  Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App.
1996).  Probable cause must accompany an arrest.  Gaines, 99
S.W.3d at 666.  Probable cause to arrest exists when the facts and
circumstances within the knowledge of the arresting officer, and of which he
has reasonably trustworthy information, are sufficient to warrant a reasonable
person to believe that a particular person has committed or is committing a
crime.  Id.  During an investigative detention, an
officer may employ the force reasonably necessary to effect the goal of the
detention: investigation, maintenance of the status quo, or officer
safety.  Mount, 217 S.W.3d at 724.  However, if the
force utilized exceeds that reasonably necessary to effect the goal of the
stop, this force may transform an investigative detention into a full-blown
arrest.  Id. Whether a person is under arrest or subject to a
temporary investigative detention is a matter of degree and depends upon the
length of the detention, the amount of force employed, and whether the officer
actually conducts an investigation.  Mount, 217 S.W.3d at
724.  Whether a detention is an actual arrest or an investigative
detention depends on the reasonableness of the intrusion under all of the
facts.  Id.  

 

Appellant contends he was arrested without probable cause
when Deputy Smith handcuffed him almost immediately after he was
detained.  It is uncontested that once he was handcuffed, appellant was
under restraint and no longer free to walk away from Deputy Smith.  In
addition, the State concedes that probable cause to arrest appellant did not
arise until after Deputy Smith: (1) had handcuffed appellant; (2) reached into
appellant=s pocket and removed his wallet; and (3) found the
baggy containing cocaine in appellant=s wallet when he
removed appellant=s driver=s license from the
wallet.   The majority does not address appellant=s lack of probable
cause to arrest contention but instead glosses over the handcuffing when it
holds Deputy Smith=s reaching into a handcuffed appellant=s pants pocket to
retrieve his identification was a momentary intrusion of no constitutional
significance.  The majority=s position that
Deputy Smith=s reaching into appellant=s pants to locate
his identification was constitutionally insignificant is undermined by section
38.02 of the Texas Penal Code. See Tex. Penal Code
Ann. ' 38.02(a) (Vernon 2003).  Under
section 38.02, a person is only required to provide identifying information to
a peace officer once that person has been lawfully arrested.  Id.  Even accepting the majority=s view of the events, that appellant
was still only detained after he was handcuffed, appellant had no legal
obligation to provide identifying information to Deputy Smith.  Id.   Therefore, Deputy Smith violated appellant=s constitutional rights when he
reached into appellant=s pants pocket searching for his wallet.  In addition,
because the record reflects that Deputy Smith did not conduct a pat-down Terry
search of appellant=s clothes, the retrieval of appellant=s wallet cannot be justified as the
legitimate byproduct of the discovery of an immediately recognizable weapon or
contraband.  See Minnesota v. Dickerson, 508 U.S. 366, 374B75, 113 S.Ct. 2130, 124 L.Ed.2d 334
(1993) (holding police may seize non-weapon contraband detected during a
protective Apat-down@ search for weapons under Terry when the contraband=s contour or mass makes it=s identity immediately
apparent).  Finally, any consent that may be inferred from the events was
not voluntarily given because appellant had already been handcuffed.  See
Manzi v. State, 56 S.W.3d 710, 717 (Tex. App.CHouston [14th Dist.] 2001, aff=d 88 S.W.3d 240 (Tex. Crim. App. 2002) (the fact a
suspect was handcuffed when he gave consent weighs heavily against finding the
consent was voluntary).

 

In support of the trial court=s ruling, the
State cites to several cases and points out that handcuffing a person during an
investigative detention is not always the equivalent of  an arrest. 
Because the special circumstances present in the cited cases are not present
here, the principle they stand for is not applicable and thus provides no basis
for ignoring the plain language of article 15.22 of the Code of Criminal
Procedure.  See Balentine v. State, 71 S.W.3d 763, 771 (Tex. Crim.
App. 2002) (while conducting investigation of shots being fired, officer
handcuffed suspect being questioned in back of patrol car after discovering
suspect lied to officer=s previous questions and there was no
bulletproof partition between front and back seats); Rhodes v. State,
945 S.W.2d 115, 118 (Tex. Crim. App. 1997) (following a car chase of two
suspects officer handcuffed suspect while his partner was chasing second
suspect in a high crime area at night); Mays v. State, 726 S.W.2d 937,
943B44 (Tex. Crim.
App. 1986) (lone officer confronted two burglary suspects justifying the
handcuffing while officer conducted investigation); Wappler v. State,
104 S.W.3d 661, 668 (Tex. App.CHouston [1st Dist.] 2003, rev=d on other grounds 138 S.W.3d 331
(Tex. Crim. App. 2004) (in a custodial interrogation case,  court held
that officer=s handcuffing of an irate and belligerent DWI suspect
was not an arrest but was for the purpose of completing investigation).

Because I believe a reasonable person, under the
circumstances present here, would believe they were under arrest once they had
been handcuffed, I disagree with the majority=s resolution of
this issue and would hold appellant was arrested without probable cause and any
evidence obtained as a result of this unlawful arrest must be suppressed. Tex. Code Crim. Proc. Ann. art. 38.23(a).

D.     
The Trial Court=s Error Is Harmful

 

Because I believe the trial court erred when it denied
appellant=s motion to suppress, and this error is subject to
harmless error analysis, I address whether this error is reversible.  See
Tex. R. App. P. 44.2.  The
error in this case violated appellant=s federal and
state constitutional rights.  Further, the Court of Criminal Appeals has
stated that appellate courts are not to speculate as to an appellant=s reasons for
pleading guilty or as to whether appellant would have pleaded guilty if a
motion to suppress had been granted.  See McKenna v. State, 780
S.W.2d 797,799B800 (Tex. Crim. App. 1989); Kraft v. State,762
S.W.2d 612, 613B15 (Tex. Crim. App. 1988).  As long
as the evidence that should have been suppressed Awould in any
measure inculpate the accused,@ an appellate court must presume that the
trial court=s denial of appellant=s motion to
suppress influenced appellant=s decision to plead guilty and is
reversible error.  See McKenna, 780 S.W.2d at 799B800; Kraft,762
S.W.2d at 613B15.  Because the evidence seized as a result of
the illegal detention of appellant is inculpatory, it must be presumed that the
trial court=s erroneous denial of appellant=s motion to
suppress influenced appellant=s decision to plead guilty. 
Therefore, I would find that the error is reversible.

Conclusion

I would find that Deputy Smith did not have reasonable
suspicion based on specific, articulable facts that appellant actually was, had
been, or soon would be engaged in criminal activity.  As the State admits
probable cause for arrest did not arise until after the cocaine was found in
appellant=s wallet, which did not occur until after appellant
was handcuffed, I would find that appellant was arrested without probable
cause.  Under both situations, the error is harmful.  Accordingly, I
would reverse the trial court=s judgment and remand for further
proceedings in accordance with this dissenting opinion.

 

 

 

 

 

/s/     
John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Majority and Dissenting Opinions filed September 25, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson. (Hudson, J., majority.)

Publish C Tex. R. App. P. 47.2(b).














[1]  The appellate record is devoid of evidence that the sheriff=s dispatcher notified Deputy Smith of the anonymous
citizen=s report of a man in black walking down a public
sidewalk.  I conclude that the dispatcher ignored the complaint; a
reasonable inference from the facts.





[2]  At the time he was detained, appellant was approximately a block
and a half from his parents= residence.





[3]  Appellant was correct when he stated that Deputy Smith did not
have the legal authority to require that appellant produce his identification
when Deputy Smith initially approached him.  See Tex. Penal Code
Ann. ' 38.02(a) (Vernon 2003) (a person commits an offense
if he intentionally refuses to give his identifying information to a peace
officer who has lawfully arrested the person). Both the State and the
majority agree that because probable cause did not arise until after the
discovery of the cocaine in appellant=s
wallet, that was the earliest point at which Deputy Smith could have lawfully
arrested appellant and thus required him to produce his identification.





[4]  Deputy Smith testified appellant did not try to run at any time,
had not refused to produce his identification prior to being handcuffed, only
questioned why Deputy Smith wanted to see it, and did not resist being
handcuffed.





[5]  The majority makes this contention despite Deputy Smith=s own testimony that appellant never attempted to
flee. 





[6]  The majority attempts to remove the cloak of anonymity from the
anonymous citizen thus boosting her credibility by concluding, without any
factual basis from Deputy Smith=s testimony,
that she Aassumed responsibility for the accuracy of the
information and could easily have been held accountable for its truth.@  The cases cited by the majority for this
proposition are all easily distinguished because, unlike this case, which involves a report of
non-criminal conduct that the anonymous citizen suspects might be somehow
connected with prior or future criminal conduct, the cited cases involve an
informant reporting specific details of actual criminal conduct observed
by the informant.  See Adams v. Williams, 407 U.S. 143, 146B47, 92 S.Ct. 1921, 1923, 32 L.Ed.2d
612 (1972) (case involved a known informant, who had previously provided
accurate information to the officer, providing tip that the defendant was
involved in illegal conduct that was immediately verifiable); Bilyeu v.
State, 136 S.W.3d 691, 695 (Tex. App.CTexarkana 2004, no pet.) (informant reported suspected
driving while intoxicated to police while in his vehicle which would have
allowed police to identify him if needed); Hawes v. State, 125 S.W.3d
535, 537 (Tex. App.CHouston [1st Dist.] 2002, no pet.)
(informant, a wrecker driver, reported observing illegal conduct and he was
readily identifiable because he had provided his name to the police dispatcher
and was the driver of a tow truck, an easily identifiable vehicle, and he was
ultimately identified and did testify at defendant=s trial); State v. Fudge, 42
S.W.3d 226, 232 (Tex. App.CAustin 2001, no pet.) (informant made a face-to-face report to police officer
that he had observed defendant engaged in specific criminal conduct); State
v. Garcia, 25 S.W.3d 908, 910B11 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (anonymous informant
made a face-to-face report to police officer that informant had observed actual
criminal conduct).





[7]  The fact an area is a high crime area or an area where certain
types of illegal conduct frequently occurs, is insufficient, by itself, to
justify detaining a person.  Gurrola v. State, 877 S.W.2d 300, 303
(Tex. Crim. App. 1994).





[8]  The majority emphasizes Deputy Smith=s training and experience in its determination that
Deputy Smith had reasonable suspicion to detain appellant.  While it is
true that law enforcement training or experience may factor into a reasonable
suspicion analysis, reliance on this training and experience is insufficient to
establish reasonable suspicion absent objective factual support.  Ford
v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).





[9]  Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed2d
889 (1968).