Affirmed and Majority and Dissenting Opinions filed September 25, 2007









Affirmed and Majority and Dissenting Opinions filed September
25, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00632-CR

____________

 

JEREMY WAYNE BALDWIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 





 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 1046027

 





 

                 
M A J O R I T Y    O P I N I O N

Appellant, Jeremy Wayne Baldwin, was charged by indictment
with possession of cocaine.  The indictment also contained two enhancement
paragraphs.  Prior to trial, appellant filed a motion to suppress which,
after a hearing, was denied by the trial court.  Pursuant to a plea bargain
agreement, appellant then entered a plea of guilty to the offense of possession
and a plea of true to the enhancement allegations.  In compliance with the
plea bargain agreement, the trial court assessed appellant=s punishment at
confinement in the state penitentiary for a term of three years.  In a
single point of error, appellant contends the trial court erred in overruling
his motion to suppress.  We affirm.

 

The record reflects that Deputy Tommy Smith of the Harris
County Sheriff=s Office was, on November 3, 2005, working as the
contract deputy patrolling the Turtle Lake subdivision.  Around ten o=clock that
evening, Deputy Smith was flagged down by a middle-aged female citizen. 
The woman, who was holding a cell phone, told Deputy Smith that she had just
called the police to report what she believed to be suspicious activity. 
She told Deputy Smith that she had seen a white male, dressed in black, walking
around looking into houses.  She also informed Deputy Smith she did not
recognize the man to be from the neighborhood.  The woman was aware, as
was Deputy Smith, there had been a string of recent burglaries in the
neighborhood.

Although Deputy Smith recognized the woman as being a
neighborhood resident from his frequent patrolling and had previously spoken to
her in passing, she was reluctant to give him any contact information because
she said she did not want to be involved and did not want to have her name
mentioned.  While Deputy Smith had never had to rely on information
provided by the woman before, he believed she was very credible and he had no
reason to doubt her.  The woman pointed out the direction she had last
seen the man, and Deputy Smith quickly drove off in that direction, looking for
the man in black.

Moments later, Deputy Smith saw appellant, dressed in
black, walking on the sidewalk.  As Deputy Smith approached appellant,
appellant turned around, saw Deputy Smith=s patrol car, and
began walking at a very fast pace.  Deputy Smith caught up with appellant,
exited his patrol car, and asked appellant for his identification. 
Appellant, who was visibly nervous, asked Deputy Smith why he wished to see his
identification, and stated he had no right to stop him for walking down the
street.  Appellant also refused to make eye contact, scanned the area, and
spoke quickly.  Appellant did not produce any identification and, based on
his unusual demeanor, Deputy Smith believed appellant was about to flee or
fight.  Fearing for his safety, Deputy Smith handcuffed the appellant.

 

After handcuffing appellant, Deputy Smith asked appellant
where his identification was located.  Appellant told him it was in his
pants pocket.  Deputy Smith reached into appellant=s pocket and
grabbed appellant=s wallet pouch.  Appellant=s wallet pouch had
a slot, with a clear plastic covering, on one side. Appellant=s driver=s license was in
this slot, behind the plastic cover.  Deputy Smith testified that, despite
the clear plastic cover, parts of appellant=s driver=s license were obstructed,
so he removed the license.  Once he removed the license, he saw a small
baggy containing a white powder in the same slot.  Appellant immediately
said: AThat dope is not
mine. I found it.@  Deputy Smith field tested the white
powder and it tested positively as cocaine.  Deputy Smith then arrested
appellant.

On appeal, appellant contends any evidence obtained on the
night of his detention and subsequent arrest was taken in violation of his
rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution and Sections 9, 10, and 19 of the Texas Constitution
because the investigatory detention was not supported by reasonable suspicion
and his arrest was not supported by probable cause.

In reviewing a ruling on a motion to suppress evidence,
appellate courts afford almost total deference to the trial court=s determination of
the historical facts, while reviewing de novo mixed questions of law and fact
not turning on an evaluation of credibility and demeanor.  State v. Garcia,
25 S.W.3d 908, 911 (Tex. App.CHouston [14th Dist.] 2000, no pet.)
(citing Guzman v. State, 955 S.W.2d 85, 87B88 (Tex. Crim.
App. 1997)).  Questions of reasonable suspicion and probable cause are
reviewed de novo on appeal.  Id. This standard applies
because the trial judge is not in an appreciably better position than the
reviewing court to make the determination.  Id.  In this
instance, the relevant facts are not in dispute and the resolution of this
appeal does not turn on an evaluation of the credibility of the two
witnesses.  Therefore, we must review the trial court=s ruling de novo
and determine whether there was sufficient reasonable suspicion to detain
appellant for the purpose of an investigation.  Id.

 

There are three distinct categories of interactions between
police officers and citizens:  encounters, investigative detentions, and
arrests.  State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App.
2002).  Encounters occur when police officers approach an individual in
public to ask questions.  Harper v. State, 217 S.W.3d 672, 674 (Tex. App.CAmarillo 2007, no
pet.). Encounters do not require any justification whatsoever on the part of an
officer.  Id.  Because appellant was in a public place, Deputy
Smith needed no probable cause or reasonable suspicion to engage him in
conversation.   Police officers Ado not violate the
Fourth Amendment by merely approaching an individual on the street or in
another public place, by asking him if he is willing to answer some questions,
by putting questions to him if the person is willing to listen, or by offering
in evidence in a criminal prosecution his voluntary answers to such questions.@  Perez,
85 S.W.3d at 819.  However,  when appellant became nervous, refused
to identify himself, and began acting strangely, Deputy Smith feared appellant
was either going to fight or flee, and appellant was detained.

A stop is deemed an investigative detention when a police
officer detains a person reasonably suspected of criminal activity to determine
his identity or to momentarily maintain the status quo to garner more
information.  Hoag v. State, 728 S.W.2d 375, 380 (Tex. Crim. App.
1987).  Circumstances short of probable cause may justify a temporary
detention for the purpose of investigation.  Garza v. State, 771
S.W.2d 549, 558 (Tex. Crim. App. 1989).  A temporary detention is
justified when the detaining officer has specific articulable facts which,
taken together with rational inferences from those facts, lead him to conclude
the person detained is, has been, or soon will be engaged in criminal
activity.  Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App.
1997).  The articulable facts used by the officer must create some
reasonable suspicion that some activity out of the ordinary is occurring or has
occurred, some suggestion to connect the detainee with the unusual activity,
and some indication the unusual activity is related to crime.  Myers v.
State, 203 S.W.3d 873, 882 (Tex. App.CEastland 2006,
pet. ref=d).   A
reasonable suspicion determination is made by considering the totality of the
circumstances.  Ford v. State, 158 S.W.3d 488, 492B93 (Tex. Crim. App. 2005).  An investigative detention must last no longer than necessary
to effectuate the purpose of the stop and must involve actual
investigation.  Akins v. State, 202 S.W.3d 879, 885 (Tex. App.CFort Worth 2006,
pet. ref=d).

 

Here, appellant contends the woman who reported him to
Deputy Smith was not known to be credible.  More specifically, appellant
claims her report was no more reliable than an anonymous tipster.  However,
Deputy Smith did not detain appellant based on the woman=s report. 
Rather, he detained appellant only after a personal encounter with appellant on
the street.  Appellant=s nervousness, shuddering, evasiveness,
refusal to identify himself to a police officer, and manner of wearing all
black clothing at 10:30 p.m. in a neighborhood where there had been a recent
string of burglaries, coupled with the woman=s report that she
had seen appellant looking into houses, are indicative of criminal activity.

Moreover, a face-to-face tip from a private citizen is
considered inherently trustworthy  because the informant places himself in
a position to be held accountable for his information if it proves to be false.
 Garcia, 25 S.W.3d at 913.  In fact, the scenario presented
here is, in many ways, similar to the one in Garcia.

 

In Garcia, an officer was stopped by an unidentified
man in a gas station parking lot. The man told the officer he had witnessed
three Aboys@ getting alcohol from
their car and he believed the boys to be underage and drinking illegally.  Id. at 910.  The man pointed out the vehicle and the officer saw three youthful
looking boys in the car.  Id.  The officer saw no other signs
of illegal behavior, but approached the car to ask the driver for
identification.  Id.  He observed signs of intoxication
in Garcia, the driver, and asked him for permission to search the car.  Id. at 911.  The officer discovered no alcohol but found marijuana under the
seat.  Id.  The man who reported the crime to the officer left
without leaving his name or contact information.  Id.  Garcia
and his passengers were charged with possession of marijuana. The trial court
granted the defendants= motion to suppress, holding there was no
reasonable suspicion for the initial stop, because the defendants Acould just as well
been [engaged in an] innocent permissible legal activity.@  Id. at 912.  This court reversed, rejecting the Apossible innocent
permissible activity@ formulation.  Id. We held the
individual who flagged down the officer was Ainherently
trustworthy@ because he came forward in person and could have been
held accountable for the information.  Id. at 913.  In
addition, the information he provided was later corroborated by the officer=s direct
observation.  Id. 

Here, the information provided by the unidentified woman to
Deputy Smith was similarly reliable. The woman approached Deputy Smith in the
same way the unidentified man approached the officer in Garcia. 
She, too, appeared personally before the officer and, in doing so, assumed
responsibility for the accuracy of the information and could easily have been
held accountable for its truth.  See Hawes v. State, 125 S.W.3d
535, 539B40 (Tex. App.CHouston [1st
Dist.] 2002, no pet.) (holding anonymous citizen informant was reliable based
on Athe mere
willingness of the informant to place himself in a position where he could
be identified@ even though he never was actually identified by the
officer) (emphasis in original).  Deputy Smith, the contract patrol
officer for the neighborhood, testified he had seen the woman on several
previous occasions and recognized her as a resident of the neighborhood. 
If he and the woman were acquainted, she could reasonably assume she would see
Deputy Smith again in the course of his duties, and Deputy Smith could have
located her had he deemed it necessary.  See Bilyeu v. State, 136
S.W.3d 691, 695 (Tex. App.BTexarkana 2004) (finding that, because
unidentified citizen approached officers in his car, this would have allowed
officers to identify him by looking up his license plates had they so wished,
and this fact increased informant=s
reliability).  A previous relationship will establish a certain degree of
reliability and trust, and it is unlikely she would give purposefully
inaccurate information to an officer she saw on a frequent basis.  See
Adams v. Williams, 407 U.S. 143, 146B47 (1972) (holding
a face-to-face informant who was Aknown to@ the officer was
sufficiently reliable to establish reasonable suspicion).  The woman had
also made a previous call to an emergency dispatcher to send a patrol car,
although the record does not reflect whether the woman identified herself to
the emergency operator.

 

Deputy Smith, like the officer in Garcia, testified
he had no reason to discredit the informant=s
statements.  She told Deputy Smith a white male was Alooking into
houses and walking around@ and further testified he Amay have been@ part of a recent string
of thefts. Although it is unclear from this statement the exact actions of the
man she saw, it is reasonable to assume the activity she saw led her to believe
that appellant=s actions were related to a crime.  His actions
were specific enough for the woman to believe him involved in the recent thefts
and alarmed her enough to seek police intervention.  See Fudge v. State,
42 S.W.3d 226, 232 (Tex. App.CAustin 2001, no pet.) (holding an
unsolicited, face-to-face report from an unidentified cab driver that defendant
driver was Aall over the road@ was specific
enough in its allegations of illegality to be the sole basis of an
investigative detention).  Based on the content of the witness=s statement and
her credibility, Deputy Smith was justified in reasonably relying on the woman=s information and
seeking to corroborate that information with his own observation.

 

Appellant emphasizes the fact that no illegal activity was
observed by either the woman or Deputy Smith.  However, there are
instances when a person=s conduct viewed Ain a vacuum@ appears purely
innocent, but when viewed in light of the totality of the circumstances may
give rise to reasonable suspicion. Woods v. State, 956 S.W.2d 33, 38
(Tex. Crim. App. 1997).  Here, Deputy Smith acted on information from a
woman he recognized, and the facts he observed corroborated enough of the
details of her report to justify the investigation.  She described
appellant=s physical description with enough accuracy to make
him easily identifiable.  Appellant fit the woman=s descriptionCa white male,
wearing black clothing, and walking westward.  See Davis v. State,
829 S.W.2d 218, 220 (Tex. Crim. App. 1992) (holding that officers seeking
corroboration of a report made permissible rational inferences of suspicion when
suspect fitting description in report wore a trench coat on a warm day). 
As the neighborhood contract patrol officer, Smith was aware of a string of
break-ins in the neighborhood in the weeks preceding appellant=s arrest. Smith=s first-hand
knowledge and his training as a police officer might reasonably have led to the
conclusion that a man walking alone at night dressed in black was worthy of
investigation.  See U.S. v. Cortez, 449 U.S. 411, 418 (1981)
(finding Awhen used by trained law enforcement officers,
objective facts, meaningless to the untrained, can be combined with permissible
deductions from such facts to form a legitimate basis for suspicion of a
particular person@).  As soon as Smith came into view,
appellant quickened his pace and began to act nervous.  See Illinois v.
Wardlaw, 528 U.S. 119, 124 (2000) (holding the Supreme Court has recognized
nervous, evasive behavior as a factor in finding reasonable suspicion in Terry
stops, and unprovoked flight is suggestive of wrongdoing, though not proof of
it); Gaines v. State, 99 S.W.3d 660, 666 (Tex. App.BHouston [14th
Dist.] 2003, no pet.) (holding defendant=s nervous demeanor
and Aalmost jogging@ away from
officers in an airport was sufficient to establish reasonable suspicion).
Though none of these facts (the time of day, appellant=s attire,
appellant=s behavior, appellant=s apparent desire
to avoid contact with Deputy Smith) would independently justify reasonable
suspicion, when combined might cause a person of reasonable caution to believe
that the action taken by Deputy Smith was appropriate, especially in response
to the unsolicited report of a concerned citizen.

The possibility of an innocent explanation does not
deprive an officer of the capacity to entertain reasonable suspicion. Woods,
956 S.W.2d at 37.   Both the United States Supreme Court and
the Texas Court of Criminal Appeals have rejected the Ainnocent
permissible legal activity@ argument.  United States v. Sokolow, 490 U.S. 1, 9B10 (1989); Woods,
956 S.W.2d at 37.  Many actions may have both the appearance of legality
and illegality, and the purpose of the investigative detention is to resolve
that very ambiguity. Woods, 956 S.W.2d at 37.

 

While appellant was handcuffed and temporarily detained,
Deputy Smith again asked appellant for his identification.  In fact, one
purpose of a temporary detention is to fix the identity of the suspicious
person.  Gearing v. State, 685 S.W.2d 326, 327 (Tex. Crim. App.
1985).  Appellant informed Deputy Smith that his identification was in his
pocket.  Because appellant was handcuffed, he could not directly produce
his identification.  We find the momentary intrusion by Deputy Smith into
appellant=s pants pocket to retrieve his identification was a
minimal, necessary, and reasonable encroachment upon appellant=s liberty under
the circumstances presented here.  Certainly, we do not believe Deputy
Smith was obliged to subject himself to harm by removing appellant=s handcuffs for
the purpose of allowing appellant to retrieve his own wallet.  Thus, we
find the trial court did not err in overruling appellant=s motion to
suppress.

Appellant=s sole point of error is overruled, and
the judgment of the trial court is affirmed.

 

 

 

 

/s/     
J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered and
Majority and Dissenting Opinions filed September 25, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.  (Anderson, J., dissenting.)

Publish C Tex. R. App. P. 47.2(b).