IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1630-07






JEREMY WAYNE BALDWIN, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY





 Keller, PJ., delivered the opinion of the unanimous court. Keasler,
J., filed a concurring opinion in which Hervey, J., joined. Cochran, J., filed a
concurring opinion.



 The question here is whether an officer exceeded his authority during a suspect's detention. 
After asking the handcuffed suspect where his identification was located, the officer reached into the
suspect's pocket to retrieve his wallet. We hold that the officer did exceed his authority, and we
reverse the judgments of the courts below.


I. BACKGROUND


A. The Incident


 The trial court denied appellant's motion to suppress evidence without making any express
findings of fact. Viewed in the light most favorable to the trial court's ruling, (1) the evidence shows
the following: Deputy Tommy Smith was patrolling the Turtle Lake subdivision, a "medium" crime
neighborhood, at about 10:30 p.m. on November 3, 2005, when he was "flagged down by a citizen"
standing outside with a phone in her hand. The middle-aged woman, whom Deputy Smith had
previously seen in the neighborhood, told him that she was surprised that he had arrived so quickly. 
She thought that he had been dispatched after she called the police.

 The woman said that "she had spotted a white male dressed all in black walking around
looking into houses," and she did not recognize him to be from the neighborhood. Deputy Smith
did not know whether the woman meant that the person was looking into houses from the sidewalk
or walking up to the windows to look inside. The woman knew, as did Deputy Smith, that there had
been several burglaries in the neighborhood, and she told Deputy Smith that she didn't know if the
white male "was a part of it or not, but he may have been." After this conversation, Deputy Smith
drove off in the direction in which the woman had seen the man walking.

 A few blocks away, Deputy Smith encountered appellant, who matched the description the
woman had given him. Appellant was dressed all in black and walking down the sidewalk. After
seeing Deputy Smith and making eye contact, appellant "began a very fast walking pace away from"
the officer. Deputy Smith stopped his patrol car, got out, and walked up to appellant. The deputy
told appellant about the citizen's call, asked where he lived, and asked for his identification. 
Appellant did not respond to the question about where he lived, but he asked why the officer wanted
to see his identification, and he looked "nervous." (2) Based on his past experience, Deputy Smith
determined that appellant was anxious and nervous to a degree that "usually means he is going to
fight or he is going to run." Appellant's behavior was consistent with that of other uncooperative
persons Deputy Smith had encountered, and as a result, the deputy was "in fear of [his] life."

 At that point, Deputy Smith handcuffed appellant for "officer safety" and asked where his
identification was. Appellant replied that it was in his right pants pocket. Deputy Smith considered
that response to constitute permission to reach into appellant's pocket, so he did, and he retrieved
a small wallet. Appellant's driver's license was in the wallet inside a clear plastic case, and Deputy
Smith took the license out of the case to examine it. At that point, he saw a small baggie with white
powder in it behind the license. When Deputy Smith took the baggie out of the case, appellant said,
"That dope is not mine. I found it." The white powder field-tested positive for cocaine.

B. Court of Appeals Opinion 


 After the motion to suppress was denied, appellant pled guilty pursuant to an agreement. He
then appealed. Upholding the trial court's ruling on the motion to suppress, the court of appeals
found that the circumstances that were related to the officer by the citizen and observed by the officer
before appellant was handcuffed were sufficient to give rise to reasonable suspicion to detain him
for further investigation. (3) The court of appeals also found that the momentary intrusion into
appellant's pants pocket to retrieve his wallet "was a minimal, necessary, and reasonable
encroachment upon appellant's liberty under the circumstances." (4)

II. ANALYSIS


 We do not need to decide whether Deputy Smith effectuated an arrest or an investigative
detention, nor do we need to decide whether reasonable suspicion existed to support an investigative
detention. There was no valid basis for an arrest, and, assuming arguendo that there was a valid
basis for an investigative detention, there was no valid basis for reaching into appellant's pocket to
procure his wallet.

 Had there been a valid arrest, Deputy Smith's act of reaching into appellant's pocket would
have qualified as a "search incident to arrest." (5) But to effectuate a valid arrest, an officer must at that
time have "probable cause to believe that a criminal offense has been or is being committed" by the
person in question. (6) The ultimate determination of whether probable cause exists is subject to de
novo review on appeal. (7) Probable cause is a "fluid concept" that cannot be "readily, or even usefully,
reduced to a neat set of legal rules." (8) Though the concept evades precise definition, it involves "a
reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched
or seized." (9) "Probable cause" is a greater level of suspicion than "reasonable suspicion" and requires
information that is more substantial in quality or content and a greater reliability with respect to the
source of information. (10) At least in the context of searches, probable cause involves "a fair
probability that contraband or evidence of a crime will be found." (11) Probable cause is a relatively
high level of suspicion, though it falls far short of a preponderance of the evidence standard. (12) 

 At the time he reached into appellant's pocket, Deputy Smith had the following information:
(1) a woman he knew by sight was so concerned about an unknown man walking in the
neighborhood that she called the police, (2) appellant fit the general description given by the woman,
(3) appellant was dressed all in black, (4) appellant was looking into houses, but the officer had not
ascertained from what vantage point this took place, (5) there had been several recent burglaries in
the area, (6) the area was a "medium" crime neighborhood, (7) it was 10:30 at night, (8) upon seeing
the deputy, appellant began to walk more quickly, (9) appellant was very nervous, glancing around,
scanning the area, and refusing to make eye contact with the deputy, and (10) appellant asked why
he needed to present his identification. We conclude that these circumstances did not give rise to
the relatively high level of suspicion that would constitute probable cause to arrest. Because Deputy
Smith did not have probable cause to arrest at the time, reaching into appellant's pocket cannot be
justified by the "search incident to arrest" doctrine. 

 A valid investigative detention can confer upon an officer the authority to pat down the
suspect for weapons. (13) Under the "plain feel" doctrine, an officer conducting a pat-down may seize
an object "whose contour or mass makes its identity immediately apparent" as contraband. (14) But
when the conditions of the "plain feel" doctrine (or the "plain view" doctrine) are not present, an
officer conducting a valid investigative detention must have probable cause in order to conduct a
search for non-weapon contraband or other evidence. (15) For the same reason that Deputy Smith
lacked probable cause to arrest, he also lacked probable cause to search for non-weapon contraband
or other evidence. Though an officer may ask a defendant to identify himself during a valid
investigative detention, (16) that does not automatically mean that the officer can search a defendant's
person to obtain or confirm his identity. Consequently, the officer's conduct of reaching into
appellant's pocket - even under a valid investigative detention - was an illegal search unless there
existed some exception to the usual probable cause requirement. 

 The only exception worthy of discussion in this case is consent. As mentioned above, Deputy
Smith believed that appellant's answer to a question regarding the location of his identification
constituted permission to retrieve that identification. We find this belief to be objectively
unreasonable. Appellant's response was simply an answer to the officer's question (after being
handcuffed) and not a consent for the officer to search his person. (17)

 We reverse the judgments of the courts below and remand the case to the trial court for
further proceedings consistent with this opinion. 

Filed: March 11, 2009

Publish
1. Guzman v. State, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997).
2. Deputy Smith described appellant's nervousness as being "nervous with his hands, lot
of movement with his hands, speaking fast, looking, eyes not - head not turning, but eyes
scanning the area." In addition, appellant did not look Deputy Smith in the eye during this
interaction.
3. Baldwin v. State, 237 S.W.3d 808, 812-14 (Tex. App.-Houston [14th Dist.] 2007).
4. Id. at 814.
5. Chimel v. California, 395 U.S. 752, 762-63 (1969).
6. Devenpeck v. Alford, 543 U.S. 146, 152 (2004).
7. Guzman, 955 S.W.2d at 87-88.
8. Maryland v. Pringle, 540 U.S. 366, 370-71 (2003). 
9. Id.
10. Alabama v. White, 496 U.S. 325, 330 (1990).
11. Id.
12. See Pringle, 540 U.S. at 371 (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)).
13. See Terry v. Ohio, 392 U.S. 1, 29 (1968).
14. Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993). An officer may not, however,
manipulate the unseen item to determine its identity as contraband. Id. at 378-79.
15. Id. (discussing Arizona v. Hicks, 480 U.S. 321 (1987))(Though officer in Hicks had the
right to be where he was, he could not move a stereo to reveal its serial numbers without probable
cause to believe that it was stolen.).
16. See Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 187 (2004)("The principles of
Terry permit a State to require a suspect to disclose his name in the course of a Terry stop.").
17. See Kaupp v. Texas, 538 U.S. 626, 631 (2003)(Suspect's "okay" in response to
officer's statement that "we need to go and talk" was a "mere submission to a claim of lawful
authority" rather than consent to accompany the officer.).